UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20643-CV-MORENO/O'SULLIVAN

HENRY LEE BRYANT,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) filed by Henry Lee Bryant (hereinafter "the Movant" or "Mr. Bryant"). This matter was referred to the undersigned by the Honorable Federico A. Moreno, United States District Judge. See Order of Referral to Magistrate Judge O'Sullivan Regarding Movant's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (DE# 7, 3/3/16). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) be **DENIED** for the reasons stated herein.

## PROCEDURAL HISTORY

### A.   Underlying Criminal Prosecution

On June 28, 2012, a federal grand jury returned a superseding indictment against Mr. Bryant and his co-defendants, Octavius McLendon and Daniel Mack, in

Case No. 12-cr-20276-FAM. <u>See</u> Superseding Indictment (DE# 38 in Case No. 12-cr-20276-FAM, 6/29/12). The Superseding Indictment charged all three defendants with conspiracy to possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 846 (Count 1), attempt to possess with intent to distribute cocaine on December 21, 2011 in violation of Title 21, United States Code, Section 846 (Count 2), attempt to possess with intent to distribute cocaine on January 14, 2012 in violation of Title 21, United States Code, Section 846 (Count 3) and using and possessing a firearm during and in relation to a drug trafficking crime in violation of Title 21, United States Code, Section 924(a)(1)(A) (Count 4). <u>Id.</u>

The charges in the Superseding Indictment stemmed from an undercover investigation wherein Mr. Bryant and Mr. McLendon transported nine kilograms of sham cocaine on December 21, 2011 and ten kilograms of sham cocaine on January 14, 2012. <u>See</u> Discussion, <u>infra</u>. Mr. Mack, a police officer, used his marked police vehicle to escort the sham cocaine. <u>Id.</u>

**B.     Mr. Bryant's Post-Arrest Statements, Mr. Mack's Motion for Severance and the Court's Evidentiary Ruling on Post-Arrest Statements and Sham Cocaine**

      **1.     Post Arrest Statements**

On September 13, 2012, the government moved to exclude Mr. Bryant and Mr. Mack's post-arrest statements as hearsay. <u>See</u> United States['] Motion <u>in</u> <u>Limine</u> to Bar Evidence, Testimony and Argument Related to Defendants' Post-Arrest Statements (DE# 60 at 1 in Case No. 12-cr-20276-FAM, 9/13/12). The government's motion did not provide a transcript of the statements or discuss their substance.

On the first day of trial, the Court announced that "**neither the defendant nor**

**the Government [could] mention or introduce**, either in opening statement or in evidence, **post[-]arrest statements that include[d] inculpatory statements about another defendant[ ]**." Trial Transcript (DE# 144 at 8 in Case No. 12-cr-20276-FAM, 1/14/13) (hereinafter "Trial Transcript DE# 144") (emphasis added). The Court warned of the consequences of violating this ruling:

> [**Y]ou're all going to abide by the <u>Bruton</u> [r]ule.**[1] **If anybody violates the <u>Bruton</u> [r]ule, you're going to go to jail as a lawyer**. That's what's going to happen. **I'm going to hold you in contempt, and you're going to go to jail.** It's as simple as that. So I'm warning you right now. You cannot get up and say, my defendant stated in a statement that the codefendant did it. No, you cannot do that.
>
> Now, you, of course, if you're a defense counsel and you want to take the risk and say that your client is going to take the stand, and he's going to say he didn't do it, fine. But you're not going to go further than that. When the defendant, if a defendant elects to take the stand, at that point the defendant, of course, is entitled to talk about the case; and since he's subject to cross-examination, we don't have any <u>Bruton</u> problems. But there is a <u>Bruton</u> problem if it's a statement that comes in without the defendant testifying, and people change their minds all the time. **So there will be no mention by a defense lawyer of any statement that inculpates another defendant.** You, of course, can talk about your own client and what he did.
>
> Any question about that? **Unless you want free room and board, that's the way it's going to be.**

Trial Transcript DE# 144 at 8-9 (emphasis added) (footnote added).

## 2.   Mr. Mack's Motion for Severance

The Court's announcement prompted counsel for Mr. Mack to raise the possibility that Mr. Mack would move to sever the trial:

> [Counsel for Mr. Mack]: Okay. Well, Judge, **it may lead to a motion to**

---

[1] "The <u>Bruton</u> rule bars the admission of incriminating statements made by nontestifying co-defendants at a joint trial." <u>United States v. Mack</u>, 572 F. App'x 910, 926 (11th Cir. 2014) (citations omitted).

**sever**, because some things happened over the weekend.

THE COURT: Well, usually things happen over the weekend. I'm going to start trying cases on Friday, because that's what always happens.

Exculpatory statements cannot come in because they're hearsay. **A defendant's own exculpatory statements made after arrest cannot come in, because it's rank hearsay.** See? If you say, I didn't do it, you've got to take the stand and say I didn't do it. Because the statement "I didn't do it" does not have the indicia of reliability that "I did it," that that statement has. That's the reason it's hearsay. **So exculpatory statements, of course, cannot come in.**

However, if a defendant takes the stand, and I'm not getting involved in that, a defendant -- the only reason I'm bringing this up is because you all have brought it up. **If a defendant takes the stand, of course, he can say, I didn't do it, I did this, so-and-so was there, and then he's subject to cross-examination. But you cannot bring in a defendant's inculpatory statement that includes guilt of another defendant, and you cannot bring in a defendant's exculpatory statement.**

Any problems with that? Any misunderstanding? Because **I'm serious about this. Not only would there be a mistrial, the reason there will be a mistrial is because the lawyer is going to have a lot of time of consultation with a client if the client is in jail. If the client is not in jail, we're going to have the reverse. The client is going to have to seek permission to see the lawyer in jail. So don't violate this when I've been giving you a warning. Please don't do it.**

Trial Transcript DE# 144 at 9-11 (emphasis added).

When counsel for Mr. Bryant sought clarification, the following exchange took

place:

[Counsel for Mr. Bryant]: Just to be clear, Judge, you're talking about –

THE COURT: I thought I was clear, but maybe my accent is bad already at this early hour. I don't know.

[Counsel for Mr. Bryant]: There's no communication issue, Judge. We're talking specifically about post-arrest statements.

THE COURT: Well, what else would you be talking about? Did I say post-arrest statements?

[Counsel for Mr. Bryant]: Correct, Judge.

> **THE COURT: What are you going to say that you think is questionable that may impinge upon your liberty?**
>
> **[Counsel for Mr. Bryant]: Nothing, Judge.**

Trial Transcript DE# 144 at 11 (emphasis added).

In response to the Court's ruling, counsel for Mr. Mack made an <u>ore</u> <u>tenus</u> motion to sever the trial. Trial Transcript DE# 144 at 12. Counsel for Mr. Mack advised the Court that on the Friday before trial, "Mr. Bryant made a statement to the Government and the agents that, in fact, [Mr. Mack] was told that what was in the car at the time was cash." <u>Id.</u> at 14. The Court inquired whether Mr. Bryant would be testifying at trial. Counsel for Mr. Bryant advised the Court that "at this point we reserve our right to testify or not. I cannot indicate if my client will testify." <u>Id.</u> at 15. In light of this response, the Court denied as premature, Mr. Mack's <u>ore</u> <u>tenus</u> motion to sever the trial: "Defendant says he's going to testify. You question him. If he doesn't testify, then you can make it at that point, but as of now, it's denied as premature." <u>Id.</u> at 15-16. Mr. Bryant did not testify at trial and Mr. Mack did not renew his motion to sever the trial after the government rested.

### 3.    The "Missing" Sham Cocaine

On the second day of trial, counsel for Mr. Bryant raised concerns with the Court about the admissibility of the sham cocaine. Trial Transcript (DE# 145 at 7-10 in Case No. 12-cr-20276-FAM, 1/14/13)) (hereinafter "Trial Transcript DE# 145"). Initially, counsel for Mr. Bryant stated that he had concerns about the chain of custody:

> [Counsel for Mr. Bryant]: One potential issue, Judge, I would like to bring it up now while the jury is out.
>
> THE COURT: With this witness?
>
> [Counsel for Mr. Bryant]: I anticipate it. **It has to do with the**

**admissibility of the sham cocaine. We just learned this morning that the product that was used during the first encounter is no longer available. It's been either reused or destroyed and that the second batch of product at the second meeting is comprised of new materials and some of the old materials that were repackaged and introduced. My main concerns are chain of custody.**

Id. at 7 (emphasis added). Following a brief exchange with the Court, counsel for Mr. Bryant clarified that his concern had to do with differences in packaging between the sham cocaine used during the two dates of transportation:

[Counsel for Mr. Bryant]: Let me back off a bit, Judge. I didn't have much time to formulate my argument, but chain of custody may not be appropriate. **I guess the main concern for the defense, and it's not  a guess, the main concern for the defense is there's a difference in the packaging that's going to be seen by the jurors as to the first event and the second event, and the introduction of this evidence may confuse the jury as to those issues.**

Id. at 8 (emphasis added). In response, the Court inquired of the government whether they had "photographs of how [the sham cocaine] was packaged the first time and the second time." Id. The government responded in the affirmative and the Court told counsel for Mr. Bryant to "look at the pictures and then you can tell them, it doesn't look like real cocaine, it looks like a package of cash. I mean, I don't know, whatever you all want to do." Id. at 9.

Counsel for Mr. Bryant advised the Court that he would not be stipulating to the introduction of the bag of sham cocaine into evidence. Trial Transcript DE# 145 at 9. The Court responded that counsel for Mr. Bryant did not "have to stipulate to anything" and that counsel for the government would "ask the predicate questions. If you have an objection, you make your objection, I make my ruling, and then you can cross-examine and it goes to the weight of the evidence." Id. at 10.

At trial, the government introduced into evidence photographs of the sham

6

cocaine used on December 21, 2011 and January 14, 2012, the actual "bricks" of sham

cocaine used on January 14, 2012 and audio/visual recordings from both dates. See

Trial Transcript DE# 145 at 72, 77, 94, 96-97, 195 (publishing photographs, video and

the actual sham cocaine from January 14, 2012).

## C.    Evidence Presented at Trial

During a four-day trial, the jury heard testimony that FBI Special Agent Dante

Jackson (hereinafter "Agent Jackson") was working undercover as the general manager

of a South Beach nightclub. Trial Transcript DE# 144 at 73. On December 2, 2011,

Agent Jackson met with Mr. Bryant at Agent Jackson's office at the nightclub. Trial

Transcript DE# 145 at 14. The audio and video equipment failed to record the

December 2, 2011 meeting. Id. at 16.

At trial, Agent Jackson testified that the December 2, 2011 meeting:

> was the first discussion we had about the transporting of drugs. I
> discussed with Mr. Bryant that I had an associate in New York who was a
> childhood friend that was involved in drug trafficking. I was laundering [this
> friend's] money through the nightclub, and [the friend] had proposed a
> deal to me to assist him with laundering some drug proceeds, and in
> exchange, I would be paid for that.

Trial Transcript DE# 145 at 14. Agent Jackson testified that Mr. Bryant "was fine with it"

and had stated that "he had some associates who could assist and that he would be

willing to proceed with it." Id. at 14-15.

Agent Jackson described the plan as follows:

> The initial plan was to transport the drugs from a point in Miami to another
> destination, and [Mr. Bryant] would provide police officers to assist with
> escorting the drugs. The whole thing I presented to him was I didn't want
> the drugs being picked up by police, so we wanted police escorts to make
> sure the drugs made it from Point A to Point B.

Trial Transcript DE# 145 at 15. Agent Jackson testified that he "was very specific. [He]

told [Mr. Bryant] that [he] wanted police officers with units and that they need[ed] to be in police uniform in case there [were] officers that would interdict the loads." Id.

Agent Jackson met with Mr. Bryant again on December 4, 2011. Trial Transcript DE# 145 at 16. The December 4, 2011 meeting was audio/visually recorded. The video of the December 4, 2011 meeting was played at trial. Id. at 16-17 (noting that video was played). During this meeting Mr. Bryant reported that he had recruited police officers to provide assistance, stating: "I got four and they said that they could give whoever I need[ed]. They all county guys. Plus, I got two Beach guys." Id. at 17-18.

On December 9, 2011, Agent Jackson and Mr. Bryant met at the nightclub. The December 9, 2011 meeting was audio/visually recorded and played for the jury. Trial Transcript DE# 145 at 25 (noting that video was played). During this meeting, Mr. Bryant told Agent Jackson that he had two police officers who would provide security for the transportation of the drugs. Mr. Bryant stated that his "brother," meaning Mr. McLendon, would be involved. During the December 9, 2011 meeting with Mr. Bryant, Agent Jackson referred to the drugs as "keys," "kilos" and used the word "cocaine."

On December 10, 2011, Agent Jackson called Mr. Bryant. During this phone call, Agent Jackson used the word "dope" and Mr. Bryant abruptly hung up on him. This telephone call was recorded and played for the jury. Trial Transcript DE# 145 at 45 (noting that recording was played).

During a meeting on December 15, 2011, Mr. Bryant explained that the reason he had hung up on Agent Jackson was because Agent Jackson had used "the Coca Cola word." Agent Jackson expressed surprise and told Mr. Bryant that he usually used

the word "t-shirts." The December 15, 2011 meeting was audio/visually recorded and played for the jury. Trial Transcript DE# 145 at 55 (noting that video was played).

The first transportation of sham cocaine took place on December 21, 2011. Baltimore Police Detective KayTee Tyson was brought into the investigation to play the role of Agent Jackson's drug trafficking friend.

Agent Jackson introduced Detective Tyson to Mr. Bryant at a restaurant on December 21, 2011. Later that day, Mr. Bryant arrived at Agent Jackson's office with Mr. McLendon. The purpose of this meeting was for Mr. Bryant and Mr. McLendon to pick up the sham cocaine which they would be delivering to a parked car in a mall parking lot. The December 21, 2011 meeting was audio/visually recorded and played for the jury. Trial Transcript DE# 145 at 72 (noting that video was played).

During this meeting Detective Tyson told Mr. Bryant and Mr. McLendon that they "needed to make sure that all nine of these get there," referring to the nine "bricks" of sham cocaine. Trial Transcript DE# 145 at 193-94. Detective Tyson also stated "[c]ause this money see what am saying." At trial, Detective Tyson explained that his "money" comment meant that:

> these nine kilograms of cocaine is worth a lot of money to me. So I need to make sure that when I'm giving them to you, that they need to get there. No ifs, ands, or buts about it. If you're telling me that you can do it, you need to be able to go through with it.

Id. at 194. The jury also heard testimony from Detective Tyson that the nine kilograms of cocaine would be worth approximately $300,000.00. Id.

The video of the December 21, 2011 meeting showed Detective Tyson marking the nine "bricks" of sham cocaine with a marker and handing each one to Agent Jackson to place inside a duffel bag. This handoff took place in the presence of Mr.

Bryant and Mr. McLendon. At one point, Mr. Bryant and Mr. McLendon moved towards

the desk where the duffel bag was resting so they could get a closer look at the "bricks"

inside the duffel bag.

Detective Tyson again emphasized to Mr. Bryant and Mr. McLendon that he

wanted the "bricks" to arrive exactly as they were packaged, stating "[n]o deviation, no

taste, neither one of y'all get high right?" At trial, Detective Tyson explained why he had

asked that question:

> That question was for, to make sure that -- I didn't want a person that gets
> high to transport my drugs for me, because at that point they could decide
> to go in, take some more, test it for themselves to see what it was, if it was
> good, if it wasn't.

> So I wanted to make sure that, look, I'm telling you already not to go into
> them. So I'm making sure now, you don't get high, so it won't be no
> discrepancy with or any problems with getting to the point they need to get
> to.

Trial Transcript DE# 145 at 196.

The video played for the jury at trial showed Agent Jackson handing the duffle

bag containing the nine "bricks" of sham cocaine to Mr. Bryant. Mr. Bryant and Mr.

McLendon then left Agent Jackson's office with the duffel bag. The jury was shown

photographs of the sham cocaine from the December 21, 2011 meeting. Trial Transcript

DE# 145 at 195 (noting the publishing of photographs of the kilograms of sham cocaine

used on December 21, 2011).

The jury also saw video of Mr. Bryant and Mr. McLendon returning to Agent

Jackson's office on the same day to receive a cash payment for the delivery of the

sham cocaine. Trial Transcript DE# 145 at 198 (noting that video was played). The

video showed Mr. Bryant and Mr. McLendon counting the money in Agent Jackson's

office.

At trial, Detective Tyson explained why he had marked each "brick" of sham cocaine:

> With the marker what I was trying to do with the kilos were put initials on them, just to imply that, look, I'm putting this mark on them, putting this mark on them, so when they get to where they're going to, that's how they better arrive. So if this marker is gone off of there, then I know that something happened to the kilos because that's not how I gave them to you.

Trial Transcript DE# 145 at 193-94.

Detective Tyson testified that cocaine and heroin are packaged in the same manner as the sham cocaine had been packaged and that money was not usually packaged in this manner. Trial Transcript DE# 145 at 201-03. Detective Tyson explained that "[w]hen you're delivering money to anyone, people want to make sure that what they're getting there is money." Id. Detective Tyson also testified that based on his experience, you would not leave large sums of money in a parked car in a mall parking lot in the drug business. Id. at 203-04.

The second transportation of sham cocaine took place on January 14, 2012. On the morning of January 14, 2012, Agent Jackson, Detective Tyson and Mr. Bryant met outside a restaurant. At this meeting, Agent Jackson and Detective Tyson would be introduced to Mr. Mack. While they were waiting for Mr. Mack to arrive, Agent Jackson expressed concern about whether Mr. Mack knew what was going on and Mr. Bryant assured Agent Jackson that Mr. Mack knew about it. A recording of this meeting was played for the jury at trial. Trial Transcript DE# 145 at 83 (noting that recording was played).

Mr. Mack arrived in his police car. He wore his police uniform but no name tag. Trial Transcript DE# 145 at 206. Mr. Bryant introduced Mr. Mack using the pseudonym "James." Id. Mr. Mack's firearm was attached to his uniform belt. Id. at 207.

The restaurant was crowded that morning and the meeting was moved to another restaurant. Trial Transcript DE# 145 at 207. Detective Tyson and Mr. Bryant rode together to the second restaurant. Id. at 207-08. During the car ride, Mr. Bryant expressed concern to Detective Tyson about the December 10, 2011 phone call wherein Agent Jackson had used the word "dope." Mr. Bryant also relayed to Detective Tyson his past experience: "Well, what, what I'm saying is, these guys, these guys used to move, we talkin' about kiloton . . . . You know what I'm saying? And, I've been doing this since I've been a f*cking shorty." Detective Tyson explained to the jury that Mr. Bryant meant, he'd moved a lot of cocaine and that he'd been doing this for a long time. Id. at 214. The conversation between Mr. Bryant and Detective Tyson was audio recorded and played for the jury at trial. Id. at 208 (noting that recording was played).

Agent Jackson, Detective Tyson, Mr. Bryant and Mr. Mack sat at a table at the second restaurant. At trial, Detective Tyson testified that the purpose of the meeting was for Mr. Bryant to introduce the members of his team. Trial Transcript DE# 145 at 209. The meeting at the second restaurant was recorded and played for the jury at trial. Id. at 218 (noting that recording was played).

 In the afternoon of January 14, 2012, Mr. Bryant and Mr. McLendon arrived at Agent Jackson's office at the nightclub. The meeting was audio/visually recorded and played for the jury at trial. Trial Transcript DE# 145 at 94 (noting that video was played). The video showed Agent Jackson placing a duffel bag on his desk and proceeding to fill

the duffel bag with ten "bricks" of sham cocaine in Mr. Bryant and Mr. McLendon's presence. Mr. McLendon counted the "bricks" and commented that he "appreciated the smaller [bag] size" because it had "[b]etter maneuverability, less attention getter too." Agent Jackson handed the duffel bag containing the sham cocaine to Mr. McLendon. Mr. Bryant and Mr. McLendon confirmed their plans with Detective Tyson and Agent Jackson concerning where to deliver the duffel bag. Mr. Bryant and Mr. McLendon then left Agent Jackson's office. Id.

Later that day, Mr. Bryant and Mr. McLendon returned to the nightclub to collect the cash payment for the delivery of the sham cocaine. The audio/visual recording of Mr. Bryant and Mr. McLendon returning to Agent Jackson's office and collecting the cash payment was played for the jury at trial. Trial Transcript DE# 145 at 97-98 (noting that video was played).

At trial, the government introduced into evidence photographs of the sham cocaine from the January 14, 2011 meeting, the duffel bag used to carry the sham cocaine and the actual "bricks" of sham cocaine used on January 14, 2012. Trial Transcript DE# 145 at 96-97 (publishing the aforementioned evidence).

**D.    The Defendants' Convictions**

The jury convicted Mr. Bryant and Mr. McLendon on all four counts of the Superseding Indictment. See Verdicts (DE# 85, 87 in Case No. 12-cr-20276-FAM, 10/11/12). With respect to the firearm count, the jury found that Mr. Bryant and Mr. McLendon "possessed a firearm in furtherance of the drug-trafficking crime." Id. at 3. The jury convicted Mr. Mack on the conspiracy count, the January 14, 2012 attempt count and using a firearm during and in relation to the drug-trafficking crime. See

Verdict (DE# 86 in Case No. 12-cr-20276-FAM, 10/11/12). Mr. Mack was acquitted of the December 21, 2011 attempt count. Id.

### E.    Post-Trial Motions

On November 12, 2012, Mr. Mack filed Defendant, Daniel Mack's Second Renewed Motion for New Trial or in the Alternative Motion to Alter, Amend or Correct Order Denying Motion for New Trial and Judgment of Acquittal and Incorporated Memorandum of Law (DE# 103 in Case No. 12-cr-20276-FAM, 11/12/12).[2] Mr. Mack's motion was accompanied by the affidavit of Mr. Bryant dated November 5, 2012. See Affidavit of Henry Bryant (DE# 103-1 in Case No. 12-cr-20276-FAM, 11/12/12) (hereinafter "Affidavit of Bryant").

In this affidavit, Mr. Bryant attested that "[a]t all times between December 1, 2011 to April 4, 2012, during the events that have lead [sic] to this case, [Mr. Bryant had] never discussed with Daniel Mack anything about dealing in narcotics or escorting narcotics." Affidavit of Bryant at ¶ 2. Mr. Bryant also attested that "Daniel Mack, at all times, was lead [sic] to believe, by [Mr. Bryant], that the item in the car he was escorting was money and money only." Id. at ¶ 3. Mr. Bryant further attested that if he had been tried first and was not a co-defendant in Mr. Mack's case, Mr. Bryant "would have testified on behalf of Daniel Mack that he was never advised or told by [Mr. Bryant] that the items he was to escort were narcotics" if called to do so in a separate trial. Id. at ¶ 4. Mr. Bryant also attested that at the time of his arrest, he told the interviewing officers that "[Mr. Bryant] had told Daniel Mack that he was escorting cash for a Miami Beach

---

[2] Mr. Mack had filed a prior motion for new trial on October 17, 2017 and a motion for leave to file Mr. Bryant's affidavit. Both motions were denied by the Court. See Orders (DE# 101-102 in Case No. 12-cr-20276-FAM, 10/17/12).

night club owner" and that on the Friday before trial, he told the government that "at no time did [he] ever have any conversation about narcotics with Daniel Mack." Id. at ¶¶ 5-6.

Mr. Bryant filed a similar affidavit dated November 15, 2012 on behalf of Mr. McLendon. See Affidavit[3] (DE# 126 in Case No. 12-cr-20276-FAM, 12/21/12). This affidavit was filed in connection with Defendant Octavius McLendon's Motion to Adopt Co-Defendant Daniel Mack's Motion to Overturn the Instant Jury Verdict and Grant a New Trial (DE# 113 in Case No. 12-cr-20276-FAM, 12/18/12).

## F.    Sentencing

At the sentencing hearing, the Court addressed Mr. Bryant's newly filed affidavit indicating that he was willing to testify at a separate trial for Mr. Mack. The Court noted that if the Court were to consider these types of post-trial affidavits it would multiply the proceedings:

> Every single case, one codefendant could say the other guy didn't know anything about it, but I'm not going to say that yet. I'm going to wait until I get acquitted and then I can say it or maybe I'll wait until I get convicted and then I can say it and that would mean I would have to try every conspiracy case three times.

Sentencing Transcript (DE# 158 at 42-43 in Case No. 12-cr-20276-FAM, 2/7/13).

The Court sentenced Mr. Bryant to a total term of imprisonment of 264 months[4] followed by a ten-year term of supervised release. Judgment in a Criminal Case (DE# 121 at 2-3 in Case No. 12-cr-20276-FAM, 12/21/12). The Court later reduced Mr. Bryant's sentence to 228 months. See Order Regarding Motion for Sentence Reduction

---

[3] This document does not have a caption.

[4] Mr. Bryant was sentenced to 204 months for Counts 1 through 3 to run concurrently and 60 months for Count 4 to run consecutively.

Pursuant to 18 U.S.C. § 3582(c)(2) (DE# 179 in Case No. 12-cr-20276-FAM, 3/24/15).

## G.    Direct Appeal

All three defendants filed notices of appeal. Mr. Bryant appealed his conviction

and sentence. Mr. McLendon and Mr. Mack appealed only their convictions. On July 24,

2014, the Eleventh Circuit issued an opinion affirming the proceedings below. See

United States v. Mack, 572 F. App'x 910 (11th Cir. 2014).

The Eleventh Circuit found that the evidence presented at trial was sufficient to

support the defendants' convictions for both the drug charges and the firearm charge.

Mack, 572 F. App'x at 917-26.

With respect to Mr. Bryant, the Eleventh Circuit stated that "[t]he record [was] rife

with evidence of Bryant's knowledge that the contents of the cargo consisted of drugs"

and that "[t]here [could] be no doubt that Bryant knew exactly what he had agreed to

transport. Thus, his conviction on the drug charges must be upheld." Mack, 572 F.

App'x at 917, 918. The Eleventh Circuit recounted that at the December 9, 2011

meeting,

> Agent Jackson told Bryant "it's ten keys . . ., I mean that's what gonna be
> moving." Bryant responded, "okay." Jackson repeated himself, to be clear
> that Bryant understood, "[j]ust so you know. Uh, its ten kilo's [sic]." Bryant
> again said, "okay." Bryant acknowledged that moving the drugs was "a
> huge risk" and that the police he had recruited to do the job "usually get
> paid four, five gran' a piece."
>
> Later in the conversation, Agent Jackson stated, "it's not a incre-,
> incredible amount of cocaine, I mean so it ain't a ton. Know what I mean?"
> Bryant replied, "I understand, I understand." Jackson also said that
> "cocaine prices isn't what it used to be . . . ."

Id. at 917-18. The Eleventh Circuit also noted that on another occasion Mr.

Bryant abruptly hung up the phone upon hearing Agent Jackson use the word

"coke." Id. at 918.[5]

With respect to Mr. McLendon, the Eleventh Circuit stated that "[t]he evidence [was] ample with respect to McLendon's knowledge that the offense involved drugs." Mack, 572 F. App'x at 918. The Eleventh Circuit cited Mr. Bryant's statements to Agent Jackson concerning Mr. McLendon's role in transporting the cargo and his longstanding friendship with Mr. McLendon, stating they "ha[d] been 'in this thing' since they were children." Id. The Eleventh Circuit also noted that at the December 21, 2011 meeting, Mr. McLendon observed Detective Tyson placed "bricks" of sham cocaine into a duffle bag. Id. "Det. Tyson then handed the bag to McLendon and told him that 'there's nine in there' and that '[they] need[ed] to make sure all nine of these get there.'" Id. At this meeting, "Det. Tyson [also] instructed both Bryant and McLendon that there can be 'no deviation, no test, no taste' and asked 'neither one of y'all get high right?'" Id.

The Eleventh Circuit also found that there was sufficient evidence to support the defendants' firearm convictions. The Eleventh Circuit noted that Mr. Mack was carrying a firearm on January 14, 2012, approximately two hours before the drug transportation, knew of the illegal nature of the conspiracy, understood his police officer status was necessary for his participation in the deal and that carrying a service weapon was necessary to facilitate the drug

---

[5] The Eleventh Circuit's opinion states that Mr. Bryant hung up the phone when Agent Jackson used the word "coke." However, the trial transcript discussing the December 10, 2011 telephone conversation states that Agent Jackson used the word "dope." See Trial Transcript DE# 145 at 46.

transportation "regardless of whether its purpose was to avoid interdiction from law enforcement or also to provide security for the cargo from potential thieves." Mack, 572 F. App'x at 922.

With respect to Mr. Bryant and Mr. McLendon, the Eleventh Circuit stated: "we have no trouble concluding that the evidence against Bryant and McLendon was sufficient to sustain a guilty verdict for their aiding and abetting in Mack's section 924(c) offense." Mack, 572 F. App'x at 924. The Eleventh Circuit noted that Mr. Bryant knew in advance that a firearm would be carried. Mr. Bryant recruited Mr. Mack when Agent Jackson asked for uniformed police officers and Mr. Mack arrived at the restaurant on the morning of January 14, 2012 with a visible service weapon on his person. Id. at 924-25. With respect to Mr. McLendon, the Eleventh Circuit stated that "a reasonable jury could have concluded that McLendon, to whom Bryant referred as his 'point man' to the police officers and who was in a vehicle that was loaded with the drugs, believed that the police cruiser following closely over the course of eight or ten miles was driven by an armed police officer." Id. at 925.

The Eleventh Circuit affirmed the District Court's denial of Mr. Mack's motion to sever the trial, noting that "Mack ha[d] not shown that he established a likelihood Bryant would have testified in a separate trial." Mack, 572 F. App'x at 930. The Eleventh Circuit also affirmed the denials of Mr. Mack and Mr. McLendon's motions for new trial. Id. at 933-34. The Eleventh Circuit stated that Mr. Bryant's exculpatory statements were not newly discovered evidence and were known to the defendants prior to the start of trial. Id. at 934. The Eleventh

Circuit also noted that "[a] jury might not be receptive to Bryant's proffered testimony, which [was] inconsistent with the multiple statements he gave to the undercover agents." Id.

Mr. McLendon and Mr. Mack also argued that the District Court should have admitted Mr. Bryant's post-arrest, exculpatory statements pursuant to Federal Rule of Evidence 806 "to impeach Bryant's inconsistent co-conspirator statements to the undercover agents." Mack, 572 F. App'x at 934. The Eleventh Circuit applied a plain error standard of review because Mr. McLendon and Mr. Mack "never presented this argument to the district court." Id. The Eleventh Circuit noted that Mr. Bryant's post-arrest statements were inconsistent with the assurances he had provided to Agent Jackson:

> We have no difficulty concluding that Bryant's post-arrest statements—that he told Mack that they were transporting money and that he had never discussed narcotics with Mack—were inconsistent, as required by Rule 806, with the recorded statements (which were played for the jury), in which Bryant said that Mack "knows exactly what we're doing" and which were used to convict Mack of the drug charges.

Id. at 935. The Eleventh Circuit questioned whether counsel for Mr. Bryant would have objected to the introduction of Mr. Bryant's post-arrest statements and affirmed the District Court's ruling because Mr. Mack had failed to show plain error:

> We are not at all confident that Bryant's counsel would not have objected to any mention of his (Bryant's) prior statement to the jury because **the statements are at least mildly inculpatory as to Bryant—he was telling the agents and the prosecutor that he had never told Mack that drugs would be involved in the deal; only cash would be involved. The question which must be asked is: how would Bryant know what was going to be involved in the deal unless he was himself culpable?** Finally, we note that there was no formal tender of evidence for the district court to rule on. Mack has failed to demonstrate plain error by the district court.

Id. at 935 (emphasis added).

All three defendants argued that cumulative error warranted a reversal of the jury's verdict. Mack, 572 F. App'x at 936. The defendants cited instances of alleged prosecutorial misconduct in the form of improper comments by the prosecutor during closing argument, remarks made by Agent Jackson[6] and Detective Tyson[7] at trial and erroneous judicial rulings. Id.

With respect to the prosecutor's comments, the Eleventh Circuit found "no reason to think that the remarks prejudicially affected the substantial rights of Defendants." Mack, 572 F. App'x at 936. The Eleventh Circuit similarly found that Agent Jackson's remarks were not the kind of improper vouching which could constitute reversible error. Id. With respect to Detective Tyson's testimony, the Eleventh Circuit found no error because the "defense could cross-examine Tyson as to his experience in money laundering operations" and "[a] careful review of the transcript show[ed] no improper criticism of the defense counsel by the agent or by the court." Id.

The defendants raised three examples of erroneous judicial rulings. Mack, 572 F. App'x at 938. The Eleventh Circuit noted that "[t]wo of the three judicial rulings challenged by Defendants concern[ed] the district court's exclusion of

---

[6] At trial, when Agent Jackson was asked about the sham cocaine used on December 21, 2011, he testified as follows: "I don't know where it's at . . . I'm sure the FBI has it in custody. We don't let kilograms of cocaine walk . . . I'm sure it could be provided." Mack, 572 F. App'x at 937.

[7] Detective Tyson testified that "you would never see money packaged" in the manner in which the sham cocaine had been packaged and purportedly criticized defense counsel in front of the jury by stating, "[s]ee, what we have, ladies and gentlemen, the attorney is trying to say that—." Id. at 938.

Bryant's post-arrest statements and the denial of Mack's motions to sever and for new trial and of McLendon's motion for new trial which the Eleventh Circuit had already found were not an abuse of discretion. Id. The third allegedly erroneous judicial ruling concerned the cross-examination of Agent Jackson about Taurus Barron, "an unindicted police officer who was involved in escorting the transportation of sham cocaine during the same period as Defendants." Id. On appeal, "Defendants argue[d] that the district court restricted Jackson's cross-examination concerning Barron's purported statements to other law enforcement officers that Barron was told he was escorting money, not drugs." Id. The Eleventh Circuit found no abuse of discretion in the District Court's exclusion of Officer Barron's statement on hearsay grounds. Id.

Lastly, the Eleventh Circuit affirmed Mr. Bryant's sentence. Mack, 572 F. App'x at 940. Mr. Bryant argued that the District Court should have granted his motion for a downward departure. Id. The Eleventh Circuit found that the District Court did not abuse its discretion, adding that "Bryant's 264-month total sentence" was "substantively reasonable" and "near the low end of the applicable 248-to 295-month total range." Id.

The Eleventh Circuit issued its mandate on November 12, 2014. See Mandate (DE# 168 in Case No. 12-cr-20276-FAM, 11/12/14). The defendants sought certiorari review from the Supreme Court of the United States. The Supreme Court denied Mr. Bryant's petition on February 23, 2015 and Mr. McLendon and Mr. Mack's petitions on February 27, 2015. See Denials of Writs of Certiorari (DE# 174 in Case No. 12-cr-20276-FAM, 2/25/15); (DE# 175, 176 in Case No. 12-cr-20276-FAM, 3/2/15).

H.      **Motion for New Trial Based on Agent Jackson's Misconduct**

During the pendency of the appeal, the government disclosed to the defendants that Agent Jackson was under investigation for allegations arising out of his relationship with a former FBI confidential source. The former confidential source was later identified as Mani Chulpayev.

On October 8, 2015, Mr. Bryant and Mr. Mack filed motions for a new trial based on the government's disclosure of Agent Jackson's misconduct. See Defendant Henry Lee Bryant's Rule 33 Motion for New Trial Based on Newly Discovered Evidence with Incorporated Memorandum of Law, and Motions for Full Discovery, for an Evidentiary Hearing, and to Adopt the Corresponding Motions Filed or to be Filed by and on Behalf of Codefendants Mack & McLendon (DE# 181 in Case No. 12-cr-20276-FAM, 10/8/15); Defendant Daniel Mack's Motion for New Trial Pursuant to Fed. R. Crim. P. Rule 33 and Brady v. Maryland, 373 U.S. 83 (1963), and Request for Hearing (DE# 182 in Case No. 12-cr-20276-FAM, 10/8/15). Mr. McLendon filed his motion for new trial on October 13, 2015. See Defendant McLendon's Motion for New Trial and an Evidentiary Hearing and Supporting Memorandum of Law (DE# 187 in Case No. 12-cr-20276-FAM, 10/13/15).

On May 31, 2016 and June 2, 2016, the undersigned held an evidentiary hearing on the motions for new trial. See Minute Entries (DE# 252 in Case No. 12-cr-20276-FAM, 5/31/16); (DE# 255 in Case No. 12-cr-20276-FAM, 6/2/16). Following the evidentiary hearing, the undersigned allowed the parties to file supplemental briefs.

On October 27, 2016, the undersigned issued a Report and Recommendation recommending that the motions for new trial filed by Mr. Bryant and Mr. McLendon be denied. See Report and Recommendation (DE# 291 in Case No. 12-cr-20276-FAM,

10/27/16) (hereinafter "R&R"). The undersigned further recommended, that the motion for new trial filed by Mr. Mack be granted. Id.

The undersigned recommended that the Court deny Mr. Bryant and Mr. McLendon's motions for new trial because Mr. Bryant and Mr. McLendon had failed to meet the materiality prong of Brady. The undersigned noted that "'[t]he prejudice or materiality requirement is satisfied if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" R&R at 49-50 (quoting Allen v. Sec'y, Florida Dep't of Corr., 611 F.3d 740, 746 (11th Cir. 2010)).

The undersigned determined that Mr. Bryant could not meet the materiality prong. R&R at 52. The undersigned noted that the decision to change the focus of the investigation to a narcotics case was made without Agent Jackson's involvement, Detective Tyson testified at trial concerning the two transportations of sham cocaine and the jury was shown audio and video recordings of Mr. Bryant's statements and actions. Id. at 50-51. Thus, "a significant amount of evidence that was presented at trial against Mr. Bryant was not dependent on Agent Jackson's credibility." Id. at 51.

Similarly, the undersigned concluded that Mr. McLendon was not entitled to a new trial under Brady because Mr. McLendon could not show that the newly disclosed evidence of Agent Jackson's misconduct was material in his case. R&R at 58. The undersigned noted that "there was ample evidence through audio-visual recordings and Detective Tyson's testimony to support the jury's verdict against Mr. McLendon even without Agent Jackson's testimony." Id.

With respect to Mr. Mack, however, the undersigned determined that "there [was]

a reasonable probability that had evidence of Agent Jackson's misconduct been disclosed, the outcome of the trial would have been different . . . ." R&R at 61. The undersigned noted that "[t]he only reference to 't-shirts' made in Mr. Mack's presence occurred during a conversation between Mr. Mack and Agent Jackson." Id.

The undersigned rejected other arguments raised by the defendants. The undersigned found that Agent Jackson's misconduct did not undermine the quality of the investigation as a whole, noting that the decision to change the nature of the investigation to a narcotics investigation was made by agents other than Agent Jackson. R&R at 63-64. Although there was an equipment malfunction on December 2, 2011 which failed to record a meeting between Mr. Bryant and Mr. Jackson, the undersigned noted that other recorded meetings and conversations showed that Mr. Bryant was aware that he would be delivering narcotics on December 21, 2011 and January 14, 2012. Id. at 64. The undersigned found that Agent Jackson vouching for the existence of the sham cocaine at trial was not material because another agent testified that she collected the evidence and gave it to the case agent at the conclusion of the investigation and the jury was shown photographs of the sham cocaine from December 21, 2011 and January 14, 2012. Id. at 64-65. The undersigned also found that there was no evidence of improper conduct by Detective Tyson. Id. at 65-66.

The defendants also sought relief under Rule 33 of the Federal Rules of Criminal Procedure. R&R at 66. The undersigned rejected the argument that the defendants were entitled to a new trial under Rule 33 because:

> all of the defendants ha[d] failed to show that evidence of Agent Jackson's misconduct was more than merely impeachment evidence. Additionally, Mr. Bryant and Mr. McLendon ha[d] failed to show that the withheld evidence was material to the issues before the Court and that it was such

that a new trial would probably produce a different result.

Id. at 67.

Lastly, the undersigned rejected Mr. Bryant and Mr. McLendon's argument that if Mr. Mack was granted a new trial, Mr. Bryant and Mr. McLendon would also be entitled to a new trial on their firearm convictions. R&R at 74. The undersigned determined that Mr. Bryant and Mr. McLendon would not be entitled to a new trial because they "had not shown that confidence in their guilty verdicts for the firearm charge (Count 4) would be undermined," noting that "Mr. Mack would not be acquitted, he would merely be receiving a new trial." Id. at 74-75.

On December 16, 2016, the Court adopted the Report and Recommendation as to Mr. Bryant and Mr. McLendon only and denied Mr. Bryant and Mr. McLendon's motions for new trial. See Orders Adopting Report and Recommendation and Denying Motions for New Trial (DE# 300, 301 in Case No. 12-cr-20276-FAM, 2/16/16). The Court did not adopt the Report and Recommendation with respect to Mr. Mack. See Order Granting Defendant's Motion for New Trial on Counts 1 and 3 and Further Granting the Government's Motion to Dismiss the Same Counts 1 and 3 and Vacating the Sentences on Counts 1 and 3 (DE# 324 in Case No. 12-cr-20276-FAM, 4/25/17). The Court's Order stated as follows:

> **Without adopting the Magistrate Judge's Report and Recommendation**, the Court accepts the joint agreement by the defendant and the government to grant the new trial. The Court also grants the government's motion to dismiss Counts 1 and 3. However, **the conviction and sentence of 60 months on Count 4 shall remain**. For clarity, an amended judgment on Count 4 shall be entered.

Id. (emphasis added). Thus, Mr. Mack's conviction and sentence on the firearm charge were not disturbed.

I.      **Appeal of Order Denying the Motions for New Trial**

Mr. Bryant and Mr. McLendon appealed the denial of their motions for new trial. On July 3, 2019, the Eleventh Circuit affirmed the proceedings below. See United States v. Bryant, 780 F. App'x 738 (11th Cir. 2019), cert. denied sub nom. McLendon v. United States, 141 S. Ct. 383, 208 L. Ed. 2d 102 (2020).

On appeal, Mr. Bryant and Mr. McLendon argued that they were entitled to a new trial on their firearm convictions because the Report and Recommendation had recommended that co-defendant Mack be granted a new trial on his firearm conviction. Bryant, 780 F. App'x at 743. Mr. Bryant and Mr. McLendon also argued that the District Court had erred in its determination that the evidence of Agent Jackson's misconduct was not material under Brady. Id. The Eleventh Circuit rejected both arguments.

With respect to the first argument, the Eleventh Circuit noted that Mr. Mack was not granted a new trial on the firearm charge. Bryant, 780 F. App'x at 743. Instead,

> [t]he Government and Mack agreed that Mack's § 924(c) conviction would stand, and the district court entered an order to this effect. Although the district court adopted the R & R in Defendants' cases, the district court never adopted the R & R in Mack's case. Instead, the district court's order accepting the Joint Resolution Agreement explicitly state[d] it was not adopting the R & R in Mack's case.

Id. The Eleventh Circuit found that the fact that Mr. Mack was not granted a new trial was "fatal" to Mr. Bryant and Mr. McLendon's argument. Id.

As to the materiality argument, the Eleventh Circuit noted that Agent Jackson's misconduct was unrelated to Mr. Bryant and Mr. McLendon's case. Bryant, 780 F. App'x at 744. The Eleventh Circuit found this fact "highly relevant and worth emphasizing," though not dispositive. Id. The Eleventh Circuit noted that while the evidence of Agent Jackson's misconduct "would not have been admitted as substantive evidence at

Defendants' trial," it "could have potentially [been used by the defendants] . . . to impeach Agent Jackson." Id. Nonetheless, the Eleventh Circuit noted that in the instant case, "there [was] very little for which the jury had to take Jackson's word because they heard the recordings themselves." Id.

  With respect to Mr. Bryant, the Eleventh Circuit concluded that "[t]he likelihood of a different result, had Agent Jackson's misconduct been disclosed, [was] not nearly great enough to undermine . . . confidence in the jury verdict regarding Defendant Bryant's drug convictions." Bryant, 780 F. App'x at 745. The Eleventh Circuit noted that the evidence against Mr. Bryant was "overwhelming" and cited the December 9, 2011 recorded meeting where Agent Jackson made comments to Mr. Bryant about moving "ten kilos," indicated that "they were 'dealing with ten keys,' which Agent Jackson stated was 'not a [sic] incre-, incredible amount of cocaine" and that "Bryant ended up transporting 'nine' ["bricks"] on December 21, 2011, and then another ten wrapped in similar packaging on January 14, 2012." Id. (quoting record) (emphasis in opinion). Additionally, Detective Tyson provided testimony at trial. Based on the nature of the evidence against Mr. Bryant, the Eleventh Circuit concluded that "[t]o the extent Agent Jackson's trial testimony corroborated this evidence, it was cumulative." Id.

  As to Mr. McLendon's drug convictions, the Eleventh Circuit similarly found that "had Agent Jackson's misconduct been disclosed, there [was] not a reasonable probability that the result of the proceeding would have been different." Bryant, 780 F. App'x at 747. The Eleventh Circuit observed that "[g]iven there was a plan to transport 'cocaine' and Bryant recruited McLendon to help execute this plan, the evidence [was] strong that McLendon knew they were attempting to transport cocaine." Id. The

Eleventh Circuit noted that "McLendon in fact showed up for both transports, where he watched Agent Jackson load wrapped 'bricks' of sham cocaine into a duffel bag. McLendon clearly saw and counted the bricks. He completed the transports and returned to the office to receive his payment." Id. The jury also heard testimony from Detective Tyson that money would not have been packaged in the same manner the sham cocaine had been packaged because "'[w]hen you're delivering money to anyone, people want to make sure that what they're getting there is money'" and that "one package like what McLendon and Bryant transported usually represents one kilogram of cocaine or heroin." Id. (quoting Trial Transcript DE# 145 at 202-03). Lastly, the Eleventh Circuit noted that during the December 21, 2011 meeting, "[Detective] Tyson asked Defendants, '[n]o deviation, no taste, no test, neither one of y'all get high right?,'" which "would not have made sense had Defendants thought they were transporting money, as money is not 'tasted' or 'tested' even figuratively." Id. The jury heard testimony from Detective Tyson explaining why he had made that comment: "'[I] didn't want a person that gets high to transport my drugs for me, because at that point they could decide to go in, take some more, test it for themselves to see what it was, if it was good, if it wasn't.'" Id. In light of the evidence against Mr. McLendon, the Eleventh Circuit concluded that the disclosure of Agent Jackson's misconduct did not support a reasonable probability of a different result. Id.

The Eleventh Circuit did not address the issue of whether Agent Jackson's misconduct was material under Brady with respect to Mr. Bryant and Mr. McLendon's firearm convictions because "[n]ot once [did] Defendants make the separate argument that, had Agent Jackson's misconduct been disclosed, there [was] a reasonable

probability that the result of the proceeding in regard to Defendants' gun convictions would have been different or engage in the fact-specific analysis required to make this argument." <u>Bryant</u>, 780 F. App'x at 748.

The Eleventh Circuit issued a mandate on February 18, 2020. <u>See</u> Mandate (DE# 358 in Case No. 12-cr-20276-FAM, 2/18/20). Mr. Bryant and Mr. McLendon sought a writ of certiorari from the Supreme Court. On October 5, 2020, the Supreme Court denied the petition for writ of certiorari. <u>See</u> Denial of Writ of Certiorari (DE# 365 in Case No. 12-cr-20276-FAM, 10/8/20).

**J.     The Instant 2255 Proceeding**

In the interim, on February 23, 2016, Mr. Bryant filed the instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) (hereinafter "Motion"). The government filed its response in opposition on December 15, 2020. <u>See</u> United States' Response in Opposition to Henry Bryant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (DE# 51, 12/15/20) (hereinafter "Response"). Mr. Bryant filed a reply on January 27, 2021. <u>See</u> Reply to Government's Response to 28 U.S.C. § 2255 Motion and Request to Consolidate Proceedings (DE# 57, 1/27/21) (hereinafter "Reply").

This matter is ripe for adjudication.

## <u>REQUEST FOR EVIDENTIARY HEARING</u>

In his Motion, Mr. Bryant requested an evidentiary hearing with respect to one claim of ineffective assistance of counsel—trial counsel's failure to obtain and introduce the sham cocaine at trial. <u>See</u> Motion at 14 (stating that "[t]his court should schedule evidentiary proceedings (or permit discovery) to allow the packages to be adduced, then

introduced into the record."). In his Reply,[8] Mr. Bryant asked that the Court hold an evidentiary hearing with respect to the status of Agent Jackson's investigation[9] and Mr. Bryant's claims of ineffective assistance of counsel. Reply at 5, 9.

Mr. Bryant suggests that the government has a "duty to fully update the Court and the parties as to relevant information pertaining to the Brady violation that has come to light since the 2016 hearing, including any final reports regarding the misconduct, any further interviews or decisions arising from the FBI or related internal investigations, and any evidence derived from related investigations or proceedings involving Agent Jackson's misconduct" and that "[a]bsent such information, there is no meaningful way to know whether all of the relevant information is now before the Court." Reply at 5.[10]

The government maintains that no evidentiary hearing is necessary in the instant proceeding because "the record establishes that [the] section 2255 claim lacks merit." Response at 26.

"The standard for determining [the movant's] right to an evidentiary hearing is 'whether the [movant's] allegations, if proved, would establish the right' to habeas relief." United States v. Godwin, 910 F. Supp. 596, 602 (M.D. Fla. 1995) (quoting Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc)). "[A] district court is not

---

[8] The Motion was filed pro se. The Reply was filed by court-appointed counsel.

[9] Mr. Bryant states that the Court should hold "either an evidentiary hearing or [require] a further response by the government to advise the Court and the parties as to the present status and information obtained relevant to . . . [Agent Jackson's] misconduct and the Brady issues." Reply at 5.

[10] As an alternative to an evidentiary hearing, Mr. Bryant proposes that "the Court . . . direct the government to respond with any additional or updated information it has as to matters addressed in the prior evidentiary proceedings." Reply at 5.

required to grant . . . an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the [movant] is entitled to no relief.'" Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (quoting 28 U.S.C. § 2255(b)).

Here, there is no need for an evidentiary hearing as to Mr. Bryant's claims because, as discussed below, the record reveals that he is not entitled to the relief sought. Mr. Bryant is also not entitled to an evidentiary hearing to obtain an update on the government's investigation of Agent Jackson. The Court, in adopting the Report and Recommendation as to Mr. Bryant and denying Mr. Bryant's motion for new trial already determined that Agent Jackson's misconduct was not material to Mr. Bryant's case because "a significant amount of evidence that was presented at trial against Mr. Bryant was not dependent on Agent Jackson's credibility." R&R at 51 (adopted as to Mr. Bryant in Order Adopting Report and Recommendation and Denying Motion for New Trial (DE# 300 in Case No. 12-cr-20276-FAM, 2/16/16)). Mr. Bryant has not demonstrated how an evidentiary hearing or an updated disclosure on the investigation of Agent Jackson's misconduct would affect his conviction or sentence.

Accordingly, no evidentiary hearing will be held in this case and the undersigned will not recommend an updated disclosure of the investigation into Agent Jackson's misconduct.

## **ANALYSIS**

Mr. Bryant raises the following grounds for vacating his conviction and sentence: (1) multiple claims of ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) the government's failure to timely disclose Agent Jackson's misconduct; (4) the failure to introduce evidence of Mr. Bryant's gun practice and (5) the

Court's alleged threats toward trial counsel in violation of the Due Process Clause and the Sixth Amendment. <u>See</u> Motion at 14-22.

The undersigned will address these arguments below.

## A.    Ineffective Assistance of Trial Counsel

Mr. Bryant raises multiple claims of ineffective assistance of trial counsel. The Eleventh Circuit applies the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984) to analyze claims of ineffective assistance of counsel. <u>Strickland</u> requires the movant to prove that: (1) counsel's representation of the movant fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. <u>Diaz v. United States</u>, 930 F.2d 832 (11th Cir. 1991). Prejudice is the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A court may decline to reach the deficient performance prong if it is convinced that the prejudice prong cannot be satisfied. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995).

The reasonableness of counsel's conduct must be evaluated from counsel's perspective at the time. <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994). A court's review of counsel's conduct is to be highly deferential, <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance should be avoided. <u>See</u> <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11th Cir. 1992) (noting that "[c]ourts should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight."). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail

on the ground of ineffective assistance of counsel are few and far between." <u>Rogers</u>, 13 F.2d at 386.

Mr. Bryant raises claims of ineffective assistance of trial counsel based on: (1) trial counsel's failure to obtain and introduce at trial the sham cocaine, (2) trial counsel's failure to call two witnesses at trial, (3) trial counsel's failure to object to incomplete recordings and introduce evidence to supplement the gaps in the recordings and (3) trial counsel's failure to seek a separate trial.

For the reasons discussed below, the undersigned finds that Mr. Bryant's claims of ineffective assistance of trial counsel lack merit.

### 1. Failure to Obtain and Introduce into Evidence the Sham Cocaine Packages

Mr. Bryant argues that his trial counsel rendered ineffective assistance by failing to obtain from the government the sham cocaine[11] transported by Mr. Bryant and introduce it as evidence at trial. Motion at 14. Mr. Bryant argues that had the jury had the opportunity to inspect the sham cocaine packages at trial, the jury "would have observed (as Mr. Bryant did) that the packages, legitimately and objectively, appeared to contain cash, not drugs." <u>Id.</u>

The government notes that, at the time of trial, "the sham cocaine used during the December 21, 2011 undercover meeting was no longer available." Response at 10 (citing Trial Transcript DE# 145 at 7). Instead, the government introduced into evidence the sham cocaine used during a separate "undercover meeting on January 14, 2012

---

[11] Presumably, Mr. Bryant is referring to the sham cocaine used on December 21, 2011 because the sham cocaine used on January 14, 2012 was introduced into evidence at trial. <u>See</u> Trial Transcript (introducing into evidence the sham cocaine from January 14. 2012).

along with supporting audio-video recordings and other evidence." Id. at 11.

The government further notes that Mr. Bryant's trial counsel argued at trial that

the government should be required to introduce the physical packages of the sham

cocaine. Response at 10-11 (citing Trial Transcript DE# 145 at 8-10). However,

> [o]ver counsel's objection, and in accord with the rules of evidence, the
> [D]istrict [C]ourt ruled and admitted the evidence relating to the December
> 21, 2011 offense, that is, the audio-video recording of the December 21,
> 2011 undercover meeting, which exhibited [Mr. Bryant] and co-defendant
> McLendon observing and discussing the sham cocaine packages, witness
> testimony and other evidence of [Mr. Bryant] and McLendon's physical
> transportation of the bag containing the sham cocaine, and photos of the
> sham cocaine from the December 21, 2011 meeting.

Id. at 11 (citing Trial Transcript DE# 145 at 77-79). The government maintains that it

was

> not required to produce the actual sham cocaine used in the sting
> operation as long as the government laid a proper foundation for the
> introduction of other evidence relating to the physical sham cocaine, as it
> did in this case. Moreover, the government produced at trial the actual
> sham cocaine used in the second undercover meeting on January 14,
> 2012 along with supporting audio-video recordings and other evidence.
> The jury, having seen and heard admitted evidence of the December 21,
> 2011 undercover meeting, were free to decide whether the packages
> purport to contain money or drugs. By their verdict, they determined that
> the defendant agreed to transport drugs.

Id. at 11. The government further argues that "[Mr. Bryant]'s claim has no merit and was

addressed by this Court and the Eleventh Circuit and should be barred." Id.

As noted above, review of counsel's conduct is to be highly deferential,

Spaziano, 36 F.3d at 1039, and courts should avoid second-guessing an attorney's

performance. See White, 972 F.2d at 1220. Here, the trial transcript reflects that

counsel for Mr. Bryant initially raised concerns about the "missing" sham cocaine from

the December 21, 2011 transportation date. Trial Transcript DE# 145 at 7-10.

Ultimately, the government introduced into evidence photographs and videos of the

sham cocaine used on both dates and the actual "bricks" of sham cocaine used on January 14, 2012. Id. at 72, 77, 94, 96, 195 (publishing evidence).

Statements from Mr. Bryant's counsel made on the second day of trial suggest that at least some of the sham cocaine from December 21, 2011 had been repackaged and reused as part of the ten "bricks" transported on January 14, 2012. See Trial Transcript DE# 145 at 7 ("It's been either reused or destroyed and that the second batch of product at the second meeting is comprised of new materials and some of the old materials that were repackaged and introduced.").

Mr. Bryant faults trial counsel on two grounds: failing to obtain the sham cocaine used on December 21, 2011 and failing to introduce this sham cocaine as evidence at trial. Motion at 14. Mr. Bryant fails to meet the performance and prejudice prongs of Strickland.

With respect to the performance prong, counsel's assistance cannot be deemed constitutionally deficient based on his failure to obtain and introduce evidence that no longer existed. See Stepherson v. Lumpkin, No. 3:19-CV-0247, 2020 WL 5819663, at *12 (S.D. Tex. Sept. 30, 2020) (denying ineffective assistance claim raised in section 2254 petition because "[t]o the extent [petitioner] fault[ed] trial counsel for not obtaining the videotaped evidence, he ha[d] not shown deficient performance or prejudice because … he ha[d] not sufficiently overcome the state habeas court's determination that the evidence was destroyed before trial counsel was hired.").

Additionally, Mr. Bryant cannot meet the prejudice prong because even if trial counsel had somehow found and introduced the sham cocaine from December 21, 2011, the jury would have still been presented with audio/visual recordings of Mr.

Bryant's interactions with Agent Jackson and Detective Tyson, including instances where Agent Jackson referred to the drugs as "keys," "kilos" and used the word "cocaine" and the video of the December 21, 2011 meeting where "bricks" of sham cocaine were placed into a duffle bag in the presence of Mr. Bryant and Mr. McLendon. Trial Transcript DE# 145 at 72, 83. The December 21, 2011 video shows Detective Tyson making the following remarks: "[n]o deviation, no taste, neither one of y'all get high right?" Detective Tyson's explanation at trial that he made those remarks because he "didn't want a person that gets high to transport my drugs for me, because at that point they could decide to go in, take some more, test it for themselves to see what it was, if it was good, if it wasn't." Id. at 196. These remarks, as the Eleventh Circuit observed, "would not have made sense had Defendants thought they were transporting money, as money is not 'tasted' or 'tested' even figuratively." Bryant, 780 F. App'x at 747. The jury also heard testimony from Detective Tyson, when discussing a photograph of "the kilograms of cocaine or sham cocaine that were used on December 21, 2011" that money would not have been packaged in the same manner the sham cocaine had been packaged because "'[w]hen you're delivering money to anyone, people want to make sure that what they're getting there is money.'" Trial Transcript DE# 145 at 201-02.

In light of the evidence presented against Mr. Bryant at trial, Mr. Bryant's assertion that had trial counsel introduced the sham cocaine from December 21, 2011, the jury "would have observed (as Mr. Bryant did) that the packages, legitimately and objectively, appeared to contain cash, not drugs," Motion at 14, is speculative at best.

Mr. Bryant cannot show that the introduction of the sham cocaine used on

36

December 21, 2011 (had it existed) would have had an impact on his conviction in this case. Mr. Bryant is not entitled to relief based on trial counsel's failure to introduce the sham cocaine at trial.

**2.     Failure to Call Officer Taurus Barron and Sid Reese as Witnesses at Trial**

Mr. Bryant argues that his trial counsel rendered ineffective assistance when he failed to call Officer Taurus Barron as a witness at trial. Motion at 15. As noted above, "[Officer] Barron was an unindicted police officer who was involved in escorting the transportation of sham cocaine during the same period as Defendants." Mack, 572 F. App'x at 938. According to Mr. Bryant, "Officer Barron was never told that this police escort involved drugs" and Officer Barron would have testified that "that he was hired to protect the club's cash as it was transported to the bank for deposit." Motion at 15.[12]

Mr. Bryant also argues that his trial counsel rendered ineffective assistance when he failed to call Sid Reese as a witness at trial. Motion at 16. Mr. Bryant states that Mr. Reese was "another fire department official, who was present when Agent Jackson told Mr. Bryant that he needed protection because 'his lady' was robbed depositing the cash at the bank night-deposit box" and emphasized "that he wanted to make sure it did not happen again." Id. According to Mr. Bryant, "the testimony of the unassociated Mr.

---

[12] Mr. Bryant also asserts that "Officer Barron's testimony would be, that contrary to Agent Jackson's testimony, **neither Agent Jackson nor anyone else ever mentioned drugs to any of the officers or other persons involved in the club** inspections or business meetings." Motion at 14 (emphasis added). It is unclear how helpful Officer Barron's purported testimony would have been for Mr. Bryant since Officer Barron was not present for every conversation involving Mr. Bryant and Agent Jackson. In fact, Officer Barron was not a party to many of the incriminating conversations between Mr. Bryant and Agent Jackson which were audio/video recorded and played for the jury at trial. See, e.g., Footnote 13, infra.

Reese would have cast doubt on the veracity of Agent Jackson's version of the story . . .

[and trial] counsel's failure to present the exculpatory testimony is constitutionally

inadequate performance." Id.

The government notes that Mr. Bryant has not filed an affidavit establishing that

these uncalled witnesses would have appeared in Court if subpoenaed and what

testimony they would have provided. Response at 12. The government argues that trial

counsel's failure to call these witnesses was not unreasonable: "it is not unreasonable

for trial counsel to have decided that, rather than taking time away from developing a

trial strategy for his client by pursuing the noted alibi witnesses, he would instead focus

on the ensuing trial." Id. at 14. The government cites the "overwhelming evidence"[13]

---

[13] The government summarizes the following evidence introduced against Mr. Bryant at trial:

> The jury observed audio-video recordings and heard audio recordings with [Mr. Bryant], wherein, [Mr. Bryant] was told repeatedly that he would be transporting cocaine. For example, in discussing more details about the transportation twice during a meeting on December 9, 2011, [Mr. Bryant] was told, "its ten keys . . ., I mean that's what [is] gonna be moving," and "right now we're dealing with ten keys." (DE CR 145 at 40, G.E. 4, p.7-22). Moreover, [the] jury heard testimony where [Mr. Bryant] assured the undercover that he would tell the police officers that they were escorting drugs so that they would "know what's going on" (DE CR 145:32, G.E. 4, p. 11-12). [Mr. Bryant] also told the undercover that he and his brother (McLendon) would actually transport the drugs in their car and drew a diagram to explain the different roles that he, his brother, and each officer would play (DE CR 145:35, G.E. 4, p.13). Also, during a telephone call on December 11, 2011, when the undercover made reference to the "dope" that they would be transporting, [Mr. Bryant] immediately hung up (DE CR 145:45-46; G.E. 5 (Session 9, p.2)), only to later reprimand the undercover because he had thought the undercover said "coke" (DE CR 145:52-57; G.E. 6). [Mr. Bryant] then instructed the undercover not to use the word "coke" over the telephone because their conversations could be intercepted by law enforcement. (Id.)

Response at 12-13.

offered at trial against Mr. Bryant and argues that any testimony provided by these

uncalled witnesses would not have affected the outcome. Id. at 14-15.

In his Reply, Mr. Bryant argues that witness

[Sid] Reese would have provided crucial evidence showing that Agent
Jackson's sole purported reason that he offered, when he was in his
undercover role, for turning to public servants for transportation protection
was to avoid theft of money—specifically in regard to the robbery
purportedly sustained by Jackson's "sister" in depositing money at an ATM
machine.

Reply at 6. Mr. Bryant argues that "the government['s] fail[ure] to address this significant

testimony at all raises a substantial basis for an evidentiary hearing." Id. According to

Mr. Bryant, "Reese's testimony alone was so important that the completely unexplained

failure of counsel to present it calls into question the effectiveness of the representation.

But when combined with the failure to call Taurus Barron,[14] counsel's inexplicable

failures become even more acute." Id. at 6-7 (footnote added). Mr. Bryant insists that

"[a]n evidentiary hearing is warranted to determine if there was any strategic reason, or

any adequate investigation by counsel, as to the failure to present this essential

evidence on the conspiracy and § 924(c) charges." Id. at 7-8.

Mr. Bryant is not entitled to relief on this claim. "[C]omplaints of uncalled

---

[14] Mr. Bryant states that Officer Barron would have testified "that he was hired to protect
the undercover club's cash as it was transported to the bank for deposit and that neither
Agent Jackson nor anyone else ever mentioned drugs to any of the officers or other
persons involved in the club inspections or business meetings." Reply at 8. Mr. Bryant
asserts that Officer Barron's testimony "would have been powerful support for defense
of the conspiracy and § 924(c) charges, and would have at least called into question
Jackson's explanations of other evidence." Id. However, and as noted above, Officer
Barron was not present during many of the incriminating meetings and conversations
between Mr. Bryant and Agent Jackson. These meetings and conversations were
recorded and played for the jury. Thus, there is no reasonable probability that had
Officer Barron's testimony been presented at trial the outcome would have been
different.

witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir.1978).[15] "The mere fact that other witnesses might have been available . . . is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess." Id. at 1512.

Mr. Bryant is not entitled to an evidentiary hearing on what trial counsel's strategy actually was because Strickland's performance prong applies an objective standard. "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002). Here, counsel could have strategically decided not to divert the jury's attention by calling these witnesses which would have subjected the witnesses to cross-examination by the government and could have had the potential of further incriminating Mr. Bryant (Officer Barron was an unindicted police officer who was himself involved in escorting the sham cocaine)[16] in favor of focusing on attacking the evidence presented by the government. After all, any testimony which Officer Barron and Mr. Reese could have provided regarding statements made in their presence was of negligible value and would not have negated the numerous incriminating videos and recordings supporting

---

[15] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[16] Mack, 572 F. App'x at 938.

the jury's conclusion that Mr. Bryant believed he was transporting cocaine.

Mr. Bryant has not submitted affidavits from Mr. Reese and Officer Barron stating that they would have been available to testify and detailing the favorable testimony they would have provided at trial. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted) (cited by Estiven v. Sec'y, Dep't of Corr., No. 16-14056-D, 2017 WL 6606915, at *4 (11th Cir. Sept. 28, 2017) (denying certificate of appealability)). There is simply no record evidence that these witnesses would have testified at trial. In Officer Barron's case, there is reason to believe he would have been reluctant to testify at trial given his status as an unindicted police officer who had participated in the scheme.

Even assuming that Officer Barron and Mr. Reese were available to testify at trial and that they would have testified in the manner asserted by Mr. Bryant, Mr. Bryant has failed to show his trial counsel performed in a constitutionally deficient manner when he failed to call these witnesses. As noted above, Mr. Bryant's trial counsel could have strategically decided not to divert the jury's attention by calling additional witnesses which would have subjected these witnesses to cross-examination by the government and could have had the potential of further incriminating Mr. Bryant in favor of focusing on attacking the evidence presented by the government.

Additionally, Mr. Bryant has failed to meet the prejudice prong of Strickland. Conclusory allegations that witnesses would have been available and would have

testified favorably are insufficient to meet the prejudice prong. See Alexander v. Dugger,
841 F.2d 371, 375 (11th Cir. 1988) (finding that habeas petitioner "ha[d] not
demonstrated prejudice from counsel's failure to call . . . [a defense witness], as [the
petitioner] proffer[ed] no evidence to suggest that [the witness] would have testified
favorably had his attorney questioned him."); see also Sanders v. United States, 278 F.
App'x 976 (11th Cir. 2008) (per curiam) (concluding that the movant's unsupported,
conclusory generalizations were insufficient to meet the prejudice prong of Strickland
because, "[a]lthough in his § 2255 motion [the movant] was not required to provide
evidence to support his claims, by failing to disclose the details of his alleged plea offer,
he . . . failed to allege 'reasonably specific, non-conclusory facts' with respect to his
claim such that there was a reasonable probability sufficient to undermine confidence in
the outcome. Therefore, he failed to demonstrate that he suffered prejudice.") (quoting
Aron v. United States, 291 F.3d 708, 714 n. 6 (11th Cir. 2002)).

     Here, the jury was presented with audio/visual recordings of Mr. Bryant's
interactions with Agent Jackson and Detective Tyson, including instances where Agent
Jackson referred to the drugs as "keys," "kilos" and used the word "cocaine." See
Discussion, supra. The jury saw video recordings of the two meetings where Agent
Jackson and Detective Tyson placed "bricks" of sham cocaine into a duffle bag in the
presence of Mr. Bryant and Mr. McLendon. Trial Transcript DE# 145 at 72, 83. The jury
was presented with photographs of the sham cocaine used on December 21, 2011 and
January 14, 2012, the actual "bricks" of sham cocaine used on January 14, 2012 and
audio/visual recordings from both dates. See Trial Transcript DE# 145 at 72, 77, 94, 96,
195 (publishing photographs, video and the actual sham cocaine from January 14,

2012). Given the evidence presented against Mr. Bryant at trial, Mr. Bryant has not shown that had Officer Barron and Mr. Reese testified at trial, there was a reasonable probability of a different result.

### 3.    Failure to Object to Incomplete Recordings and Present Additional Testimony

Mr. Bryant argues that his trial counsel rendered ineffective assistance when he "permitted materially incomplete recordings to be introduced at trial and made no effort to either exclude the corrupted evidence or fill the evidentiary gaps by testimony." Motion at 16. Mr. Bryant cites as an example, the recorded conversation where Agent Jackson used the word "cocaine."[17] According to Mr. Bryant, due to an equipment malfunction,[18] "Mr. Bryant's clarifying chastisement of Agent Jackson, for making such a statement—even in jest—could [sic] put Agent Jackson's 'cousin' (Mr. Bryant's friend) at risk for a probation violation" was not preserved. Id. Mr. Bryant asserts that had the jury heard the complete recording "or testimony had been adduced, to respond to Agent Jackson's inquiry about Mr. Bryant hanging up after the mention of the drugs, the testimony would not have been so damning." Id. at 16-17. Mr. Bryant further argues that:

> [trial] counsel's oversight and [Agent Jackson]'s unfettered control of the recording device prevented the jury from seeing the complete picture. [Trial c]ounsel should have challenged the use of the unreliable recordings

---

[17]  The recorded conversation where Agent Jackson used the word "cocaine" took place on December 9, 2011 and was introduced at trial. See Trial Transcript DE# 145 at 25 (noting that video was played). Mr. Bryant is likely referring to the December 2, 2011 meeting which was not recorded due to an equipment malfunction.

[18] Mr. Bryant refers to the equipment malfunction as a "convenient 'equipment malfunction,'" Motion at 17, suggesting that Agent Jackson purposely caused the equipment not to record the entire conversation. However, Mr. Bryant presents no evidence to support the suggestion that the equipment failure was intentional.

and information, and in the light of an adverse ruling, trial counsel needed
to affirmatively develop the factual background of the selected statements.

Id. at 17.

The government argues that "[t]he fact that the recording of that meeting
malfunctioned is of no consequence in light of the evidence admitted at trial relating to
[Mr. Bryant]'s conduct at later recorded meetings and conversations." Response at 15.
The government further notes that the "conversation where [Agent Jackson] 'expressly
used the word cocaine'" was in fact recorded and introduced at trial. Id. (citing Trial
Transcript DE# 145 at 45-46, 52-57).

The only record evidence of an equipment malfunction occurred on December 2,
2011. However, other recorded meetings and conversations showed that Mr. Bryant
was aware that he would be delivering drugs on December 21, 2011 and January 14,
2012. The jury was presented with audio/visual recordings of Mr. Bryant's interactions
with Agent Jackson and Detective Tyson, including instances where Agent Jackson
referred to the drugs as "keys," "kilos" and used the word "cocaine." See Discussion,
supra. The jury also saw video of the December 21, 2011 and January 14, 2012
meetings where Agent Jackson and Detective Tyson placed "bricks" of sham cocaine
into a duffle bag in the presence of Mr. Bryant and Mr. McLendon. Trial Transcript DE#
145 at 72, 83. In the video of the December 21, 2011 meeting, the jury heard Detective
Tyson state, "[n]o deviation, no taste, neither one of y'all get high right?," remarks which
were consistent with the contents of the "bricks" being drugs and not money. See
Bryant, 780 F. App'x at 747 (noting that these remarks "would not have made sense had
Defendants thought they were transporting money, as money is not 'tasted' or 'tested'
even figuratively"). Thus, the December 2, 2011 equipment malfunction did not

prejudice Mr. Bryant at trial.

There is also no evidentiary support—other than Mr. Bryant's blanket assertions—concerning the existence of "Mr. Bryant's clarifying chastisement of Agent Jackson." Motion at 16. Mr. Bryant does not address how these additional statements could have been presented to the jury and there is no reason to believe Mr. Bryant would have testified at trial.

For all these reasons, trial counsel's purported failure to object to incomplete recordings and present additional clarifying testimony did not prejudice Mr. Bryant. Mr. Bryant has not met the prejudice prong of Strickland because he has not shown a reasonable probability that had trial counsel objected to the equipment malfunction and presented evidence of Mr. Bryant's chastisement of Agent Jackson, the outcome of the trial would have been different. Because Mr. Bryant cannot meet the prejudice prong, there is no need to address the performance prong. Waters, 46 F.3d at 1510.

### 4.    Failure to Seek a Separate Trial

Mr. Bryant argues that his trial counsel rendered ineffective assistance when he failed to request a separate trial. Motion at 17. Mr. Bryant argues that a separate trial would have allowed Mr. Bryant to present a complete and full defense. Id. Mr. Bryant asserts that "[i]n separate proceedings, the post-arrest exculpatory statements would have been admissible," "the unavailable witnesses (Sid Reese, Taurus Barron, Chai Footman) would have been available to testify" "[a]nd that testimony would have bolstered Mr. Bryant's position and cast doubts on the government's evidence." Id. According to Mr. Bryant, "[i]n the context of the subsequently revealed corruption of Agent Jackson, the relevance of these witnesses is magnified." Id.

The government maintains that "[t]here existed no basis for severance based on [Mr. Bryant]'s post-arrest statement exculpating co-defendants." Response at 15. The government notes that Mr. Bryant "sought to offer his self-serving post-arrest statements, in which he did not admit his own guilt but purportedly claimed that he had led co-defendants McLendon and Mack to believe that they were transporting money," which would have been "inadmissible hearsay." Id. at 17. The government further notes that "[w]hen Mack made the motion to sever, [Mr. Bryant] did not offer to testify at a separate trial or confirm that he would not be testifying at the pending trial. It was not until a motion for new trial filed by Mack, in an attached affidavit,[19] when Bryant claimed he would have testified on Mack's behalf." Response at 19 (footnote added). The government also notes that Mr. Bryant "points to nothing that suggests he would have fared any better with the separate trial than that with his co-defendants." Id.

In his Reply, Mr. Bryant insists that "[i]f a motion for severance had timely been requested, on the grounds that the statements made by Bryant would have exculpated him on the § 924(c) count and that they would not be subject to a Bruton objection at a separate trial, the district court would likely have either granted the severance or reconsidered exclusion of the evidence." Reply at 9.

---

[19] As previously noted, after the trial, Mr. Mack filed an affidavit from Mr. Bryant wherein Mr. Bryant attested that during the relevant time period, he "never discussed with Daniel Mack anything about dealing in narcotics or escorting narcotics" and that if Mr. Bryant:

> [were] not a co-defendant and [Mr. Bryant's] trial had taken place first and [Mr. Bryant] had been called to testify at a separate trial for Daniel Mack, [Mr. Bryant] would have testified on behalf of Daniel Mack that he was never advised or told by [Mr. Bryant] that the items he was to escort were narcotics.

Affidavit of Bryant at ¶¶ 2, 4.

Mr. Bryant cannot meet the performance or prejudice prongs of <u>Strickland</u>, because Mr. Bryant cannot show that the Court would have granted a motion to sever the trial had such a motion been filed by Mr. Bryant's trial counsel. As previously noted, the record reflects that the Court initially denied co-defendant Mack's motion for severance on the ground that it was premature because there existed a possibility that Mr. Bryant would testify at trial. Trial Transcript DE# 144 at 15-16. There is no reason to believe that the Court would have granted a motion for severance had it been counsel for Mr. Bryant who had raised the issue instead.

As previously noted, citing the <u>Bruton</u> rule, the Court made an evidentiary ruling on the first day of trial which excluded "post[-]arrest statements that include[d] inculpatory statements about another defendant[ ]." Trial Transcript DE# 144 at 8. Even if Mr. Bryant could clear the <u>Bruton</u> rule hurdle, the fact remains that Mr. Bryant's post-arrest statements were out of court statements offered for the truth of the matter asserted and thus constitute hearsay under Federal Rule of Evidence 801(c). Mr. Bryant does not proffer any hearsay exception which would have allowed the introduction of this statement into evidence, even at a separate trial, and the undersigned is not aware of any such exception. Thus, for the jury to hear the statements Mr. Bryant provided after his arrest, Mr. Bryant would have had to take the stand, even at a separate trial. There is no reason to believe Mr. Bryant was willing to testify either at his original trial with his co-defendants or at a separate trial.

Additionally, as the Eleventh Circuit noted, there was some risk to Mr. Bryant in introducing his post-arrest statements:

> We are not at all confident that Bryant's counsel would not have objected to any mention of his (Bryant's) prior statement to the jury because **the**

> **statements are at least mildly inculpatory as to Bryant—he was telling the agents and the prosecutor that he had never told Mack that drugs would be involved in the deal; only cash would be involved. The question which must be asked is: how would Bryant know what was going to be involved in the deal unless he was himself culpable?**

Mack, 572 F. App'x at 935 (emphasis added).

For these reasons, Mr. Bryant has not shown he is entitled to relief based on trial counsel's failure to seek a separate trial.

**B.    Ineffective Assistance of Appellate Counsel**

Mr. Bryant raises one claim[20] of ineffective assistance of appellate counsel. "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel . . . ." Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

"Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Even the failure to raise non-frivolous claims on appeal does not necessarily compel relief. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (stating that "[a]n attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal"). This is because, as the Supreme Court has recognized, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if

---

[20] Mr. Bryant states that appellate counsel failed to raise two issues on appeal. Motion at 21. However, the Motion only identifies one issue: "Appeals counsel should have raised the issue of the district court's misplaced comments (threatening counsel) concerning severance on direct appeal, even if only for plain error review." Id.

possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). As such, "it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues." <u>Payne v. United States</u>, 566 F.3d 1276, 1277 (11th Cir. 2009) (<u>per</u> <u>curiam</u>) (citing <u>Smith v. Robbins</u>, 528 U.S. 259, 287-88 (2000)).

Mr. Bryant argues that his appellate counsel rendered ineffective assistance on appeal when she failed to "raise[ ] the issue of the district court's misplaced comments (threatening counsel) concerning severance on direct appeal, even if only for plain error review." Motion at 21. The government maintains that Mr. Bryant's "appellate counsel was not ineffective and asserted reasonable non- frivolous [claims] on appeal." Response at 25.

For the reasons which will be discussed in section E of this Report and Recommendation, the undersigned finds that appellate counsel was not ineffective in failing to raise the District Court's comments as a ground on appeal. Briefly, Mr. Bryant has not shown that the Court's comments about the consequences of violating an evidentiary ruling affected trial counsel's performance. Moreover, irrespective of the District Court's warnings to counsel and irrespective of the <u>Bruton</u> rule, trial counsel would not have been able to introduce Mr. Bryant's post-arrest statements because those statements were hearsay and no applicable exception has been proffered. "When [a] defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." <u>United States v. Marin</u>, 669 F.2d 73, 84 (2d Cir. 1982). Mr. Bryant has not met the performance prong or the prejudice prong of <u>Strickland</u> and, as such, has not shown that he is entitled to relief on this ground.

**C.  The Government's Nondisclosure of Agent Jackson's Misconduct**

Mr. Bryant argues that "[t]he government knew Agent Jackson was unreliable but did not provide the defense with that information; purposefully ensuring that their key witness would not be impeached." Motion at 19. Mr. Bryant further asserts that Agent Jackson's testimony was essential to the government's case. Id. at 18. Specifically, Mr. Bryant notes that, at trial, Agent Jackson explained why the recorded equipment had malfunctioned and defined the "code words" used in the recordings. Id. Mr. Bryant asserts that "[i]f the government had revealed, to the [C]ourt, to the defense, and to the jury that Agent Jackson was under investigation for mishandling his credentials and accepting bribes, then his testimony would no longer have carried the imprimatur of a true FBI agent." Id. at 18-19.

The government argues that Mr. Bryant is barred from re-litigating any Brady and Giglio issues because "[a]s a general principle, a factual or legal issue that has been decided on appeal, cannot be re-litigated in a § 2255 proceeding." Response at 20 (citing United States v. United States Smelting Ref. & Mining Co., 339 U.S. 186, 198 (1950) and United States v. Webster, 421 F.3d 308, 310 (5th Cir. 2005)). The government notes that Mr. Bryant "had [a] full and fair opportunity to litigate his Brady and Giglio claims in his motion for new trial in the criminal case" and that, on appeal, the Eleventh Circuit affirmed the District Court's denial of Mr. Bryant's motion for new trial. Id. at 20-21.

In his Reply, Mr. Bryant asserts that he is entitled to a new trial on his firearm conviction because an essential element of the charge—the principal's guilt—was affected by the nondisclosure of Agent Jackson's misconduct. Reply at 1-2. Specifically,

Mr. Bryant argues that:

> The finding made in the Report and Recommendation . . . that the government's <u>Brady</u> violation skewed the fairness of the trial on the issue of whether codefendant Mack committed the § 924(c) offense—of which Bryant was charged solely as an aider and abettor—of necessity implies that the jury's verdict on the vicarious liability theory as to Bryant was thereby affected. Because the district court in this case has never ruled on the question of adoption or rejection of the Report's finding of that relevant <u>Brady</u> violation, the issue remains ripe for decision on 28 U.S.C. § 2255 review at this time.

<u>Id.</u> at 1. Mr. Bryant further argues that:

> The government may not use a constitutional violation affecting its case as to the principal's guilt in order to obtain a conviction of an aider/abettor. The constitutional violation in proving the principal's crime clearly affects the jury's evaluation of the evidence against the person charged merely with vicarious liability. Thus, whether or not the violation occurs in a joint trial, the government may not deny a defendant charged as an aider/abettor due process on the question of the principal's liability.

<u>Id.</u> at 2. Mr. Bryant insists that "the [D]istrict [C]ourt has neither adopted nor rejected the finding in the Report [and Recommendation] that the evidence presented as to Mack's culpability was tainted by the <u>Brady</u> violation. Therefore, the issue was not reached in the court of appeals, because it still has not been decided in the [D]istrict [C]ourt." <u>Id.</u> at 3-4.

Mr. Bryant is not entitled to relief based on the government's failure to timely disclose Agent Jackson's misconduct. To the extent Mr. Bryant argues that the government purposefully withheld information so that Agent Jackson would not be impeached or that Agent Jackson's misconduct was material to Mr. Bryant's convictions, Motion at 18-19, these arguments have already been addressed on appeal and do not merit further review in the instant section 2255 proceeding.

The Eleventh Circuit affirmed the District Court's determination that evidence of Agent Jackson's misconduct was not material to Mr. Bryant's drug convictions. <u>See</u>

<u>Bryant</u>, 780 F. App'x at 745 (stating that "[t]he likelihood of a different result, had Agent Jackson's misconduct been disclosed, is not nearly great enough to undermine our confidence in the jury verdict regarding Defendant Bryant's drug convictions."). The Eleventh Circuit did not address the materiality of Agent Jackson's misconduct with respect to Mr. Bryant's firearm conviction because it was not raised on appeal. <u>Id.</u> at 748 (stating that "[n]ot once do Defendants make the separate argument that, had Agent Jackson's misconduct been disclosed, there is a reasonable probability that the result of the proceeding in regard to Defendants' gun convictions would have been different or engage in the fact-specific analysis required to make this argument. We, therefore, do not address this issue."). As the <u>Bryant</u> decision makes clear, the materiality of Agent Jackson's misconduct in relation to Mr. Bryant's convictions has been adjudicated.

Having had a full and fair opportunity to litigate this issue on direct appeal, Mr. Bryant is not entitled to raise it again on collateral review. "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotation omitted).

Mr. Bryant's argument in his Reply—that he is entitled to a new trial on his firearm conviction because an essential element of the charge, Mr. Mack's guilt was affected by the nondisclosure of Agent Jackson's misconduct—does not fare any better.

The undersigned's Report and Recommendation, which was adopted as to Mr. Bryant, carefully reviewed the evidence presented at trial and found that "[b]ecause Mr. Bryant and Mr. McLendon ha[d] failed to show that evidence of Agent Jackson's

misconduct was material in their case, they ha[d] not shown a <u>Brady</u> violation." R&R at 66. The Report and Recommendation specifically addressed Mr. Bryant and Mr. McLendon's argument that if Mr. Mack was granted a new trial, Mr. Bryant and Mr. McLendon would also be entitled to a new trial on their firearm convictions. <u>Id.</u> at 74. The undersigned determined that Mr. Bryant and Mr. McLendon would not be entitled to a new trial because they "had not shown that confidence in their guilty verdicts for the firearm charge (Count 4) would be undermined," noting that "Mr. Mack would not be acquitted, he would merely be receiving a new trial." <u>Id.</u> at 74-75. The undersigned further determined that "confidence in Mr. Bryant and Mr. McLendon's convictions [did] not hinge on Mr. Mack's conviction." <u>Id.</u> at 75.

To the extent that Mr. Bryant disagrees with the Report and Recommendation as adopted by the District Court—in particular, the Report and Recommendation's determination that "confidence in Mr. Bryant and Mr. McLendon's convictions [did] not hinge on Mr. Mack's conviction," R&R at 75—Mr. Bryant had an opportunity to raise this issue on appeal. Therefore, Mr. Bryant may not raise this argument in the instant section 2255 proceeding. <u>See</u> <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating that "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding").[21]

Mr. Bryant maintains that "the [D]istrict [C]ourt has neither adopted nor rejected

---

[21] There are two exceptions to the procedural bar rule. "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." <u>Lynn</u>, 365 F.3d at 1234. The second exception requires a showing of actual innocence. <u>Id.</u> The record does not support either exception.

the finding in the Report [and Recommendation] that the evidence presented as to Mack's culpability was tainted by the <u>Brady</u> violation. Therefore, the issue was not reached in the court of appeals, because it still has not been decided in the [D]istrict [C]ourt." Reply at 3-4.

There are no pending issues for the District Court to decide with respect to the motions for new trial filed in the underlying criminal proceeding. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Report and Recommendation was adopted as to Mr. Bryant and Mr. McLendon's motions for new trial. <u>See</u> Orders Adopting Report and Recommendation and Denying Motions for New Trial (DE# 300, 301 in Case No. 12-cr-20276-FAM, 2/16/16). It was not adopted as to Mr. Mack's motion for new trial. <u>See</u> Order Granting Defendant's Motion for New Trial on Counts 1 and 3 and Further Granting the Government's Motion to Dismiss the Same Counts 1 and 3 and Vacating the Sentences on Counts 1 and 3 (DE# 324 in Case No. 12-cr-20276-FAM, 4/25/17). The District Court has therefore ruled on the Report and Recommendation as to all defendants and all motions for new trial have been adjudicated. There is nothing left for the District Court to decide.

Mr. Bryant is not entitled to relief on this claim.

**D.**   **Failure to Introduce Evidence of Mr. Bryant's Practice of Not Carrying a Firearm / Firearm Conviction Purportedly Based Solely on Agent Jackson's Testimony**

Mr. Bryant faults his trial counsel for failing to introduce evidence of Mr. Bryant's practice of not carrying a firearm around co-defendant McLendon. Motion at 19. Mr.

Bryant states that:

> Although two of the three defendants are licensed to carry weapons, none of them did. Mr. McClendon [sic], in particular, didn't like to be around weapons, so when ever [sic] the two might ride together, out of respect for his friend's preferences, Mr. Bryant would not carry his own handgun. This longstanding practice was not presented to the jury (trial counsel's mistake) but even with that deficiency, there was <u>no</u> evidence except Agent Jackson's testimony. Testimony that, in the light of the post-trial revelations, is self-serving and unreliable.

<u>Id.</u> (emphasis in original). Mr. Bryant also asserts that "[t]he jury relied solely on the testimony of Agent Jackson to find that a firearm was present." <u>Id.</u> Mr. Bryant argues that Agent Jackson had personal reasons for ensuring a successful investigation:

> Agent Jackson liked the lifestyle of this assignment. He was KJ, the manager of a cool club, undoubtedly receiving all kinds of gratuities and perks as part of his role. He needed to have a successful investigation to justify maintaining his club role; thereby allowing him to extend not only this assignment, but also ensure future assignments, where he could obtain similar benefits, e.g., courtside or box seats at Miami Heat games, attention of numerous women, etc.

<u>Id.</u>

It is unclear whether Mr. Bryant is raising a claim of ineffective assistance of counsel based on trial counsel's failure to introduce any evidence of Mr. Bryant's purported practice of not carrying a firearm or whether Mr. Bryant is challenging the evidence presented against him on the firearm charge because it was purportedly based solely on Agent Jackson's testimony. The government and Mr. Bryant do not address this claim in their respective Response and Reply. In any event, both grounds fail.

To the extent that Mr. Bryant is asserting a claim of ineffective assistance of counsel, Mr. Bryant cannot prevail because Mr. Bryant has failed to carry his burden of introducing more than conclusory, self-serving statements about Mr. Bryant's gun

practices. "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a 'habeas court cannot even begin to apply <u>Strickland</u>'s standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" <u>Anderson v. Collins</u>, 18 F.3d 1208, 1221 (5th Cir.1994) (quoting <u>United States ex rel. Partee v. Lane</u>, 926 F.2d 694, 701 (7th Cir.1991)). Mr. Bryant presents bare allegations concerning his purportedly longstanding practice of not carrying a firearm around Mr. McLendon.

Moreover, Mr. Bryant does not explain how he would have introduced this evidence at trial. Leaving aside admissibility considerations, Mr. Bryant did not testify at trial and the record does not reflect any willingness on the part of Mr. Bryant to testify and risk cross-examination. Additionally, Mr. Bryant fails to show how the introduction of Mr. Bryant's gun practice would have undermined the evidence that Mr. Mack was carrying a firearm on January 14, 2012. Trial Transcript DE# 145 at 206-07.

Based on this record, the undersigned cannot conclude that trial counsel's failure to introduce evidence of Mr. Bryant's gun practice fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687-88. Similarly, the undersigned cannot conclude that had Mr. Bryant's trial counsel introduced this evidence, there exists a "reasonable probability that . . . the result of the proceeding would have been different." <u>Id.</u> at 694. The jury would have still heard the testimony of Detective Tyson that Mr. Mack was carrying a firearm on January 14, 2012, the date of the second pickup/delivery of sham cocaine.

Mr. Bryant is also not entitled to relief on his second argument—that the

existence of the firearm was established solely through Agent Jackson's "self-serving

and unreliable" testimony. Motion at 19. At the outset, this argument is procedurally

barred because it was not raised on appeal. "[A] defendant generally must advance an

available challenge to a criminal conviction or sentence on direct appeal or else the

defendant is barred from presenting that claim in a § 2255 proceeding." Lynn, 365 F.3d

at 1234.[22] As the Eleventh Circuit noted "[n]ot once [did] Defendants make the separate

argument that, had Agent Jackson's misconduct been disclosed, there [was] a

reasonable probability that the result of the proceeding in regard to Defendants' gun

convictions would have been different or engage in the fact-specific analysis required to

make this argument." Bryant, 780 F. App'x at 748.

Additionally, this argument does not warrant relief because Mr. Bryant is factually

mistaken when he states that "[t]he jury relied solely on the testimony of Agent Jackson

to find that a firearm was present." Motion at 19. At trial, the jury heard testimony from

Detective Tyson that Mr. Mack arrived at the restaurant on the morning of January 14,

2012 with a firearm attached to his police uniform belt:

> Q. What, if any, weapons did you observe on him at the time that he arrived?
>
> A. Yeah, **he had his sidearm on him**.
>
> Q. Why do you remember whether or not he had his sidearm on?
>
> A. We're conducting drug business. One we have another -- now we have

---

[22] Mr. Bryant cannot meet the two recognized exceptions to the procedural bar rule, see Footnote 21, because, as further discussed in this Report and Recommendation, there can be no prejudice given that Mr. Bryant is mistaken in his assertion that the existence of the firearm was established solely through Agent Jackson's testimony. Moreover, Mr. Bryant cannot meet the second exception to the procedural bar rule considering the evidence presented against him at trial. As the Eleventh Circuit has noted, "'actual innocence' means factual innocence, not mere legal insufficiency." McKay v. United States, 657 F.3d 1190, 1197 (11th Cir. 2011).

a dirty cop that's coming. So the chances of anything happening, you know, is there. So I wanted to make sure that if he did have one -- okay, I know that he has one.

**Q. And you observed the firearm?**

**A. Yes, I did.**

**Q. Was it a pistol or was it a rifle?**

**A. It was a pistol.**

Q. Was it on his person somewhere or did you see it in a pocket? Where was it?

**A. It was attached to his uniform belt, his gun belt**.

Trial Transcript DE# 145 at 206-07 (emphasis added). The jury was entitled to rely on Detective Tyson's testimony that Mr. Mack was carrying a firearm on January 14, 2012. Based on Detective Tyson's testimony, the undersigned does not believe that the outcome of the proceeding would have been different.

Lastly, Mr. Bryant argues that Agent Jackson had personal reasons for ensuring a successful investigation. Motion at 19. However, the decision to change the focus of the investigation to a narcotics investigation was made by agents other than Agent Jackson. See R&R at 63-64.

In sum, Mr. Bryant has not shown that his trial counsel's failure to introduce evidence of Mr. Bryant's purported practice of not carrying a firearm around Mr. McLendon entitles him to relief. Mr. Bryant has not shown that had evidence of Mr. Bryant's gun practice been introduced at trial, there exists a reasonable probability of a different outcome or that the failure to introduce this gun practice into evidence constituted deficient performance. The existence of the firearm was established through Detective Tyson's testimony that Mr. Mack (not Mr. Bryant) was carrying a firearm on

January 14, 2012. Lastly, regardless of Agent Jackson's personal interests, the decision to change the focus of the investigation to a narcotics investigation was made by agents other that Agent Jackson.

**E. Due Process and Sixth Amendment Violation**

Mr. Bryant argues that the District Court violated his due process and Sixth Amendment rights when it threatened to sanction Mr. Bryant's trial counsel:

> The [D]istrict [C]ourt chilled the strategy and impugned the proceedings['] integrity by threatening defense counsel with imprisonment, if any person mentioned Mr. Bryant's post-arrest statements that exculpated the co-defendants. The court told counsel, "If you so much as mention the statements, you will be [ ]visited by your clients in jail[ ]."

Motion at 20. Mr. Bryant argues that:

> It is beyond the Sixth Amendment's tolerance for the [C]ourt to threaten to imprison an attorney for engaging in a defense strategy, that is neither illegitimate or fraudulent. Moreover, the unquantifiable effect (the chilling effect) of a judge willing to reach beyond the bench sends a wave of uncertainty through the trial. An attorney may "pull a punch" or "turn a blind eye" out of fear that the court will not like the tactic and punish not only the client but also the lawyer.
>
> The [D]istrict [C]ourt's threat cast a shadow on what [sic] counsel's advocacy then was not as zealous as it should have been. A new trial before an unbiased tribunal is required.

Id.

The government notes that the District Court's instruction against introducing Mr. Bryant's post-arrest, exculpatory statement was "directed to everyone, [and was] in no way intended or interfered with the attorney-client relationship." Response at 23. The government further notes that the "[C]ourt did not foreclose such testimony, however, it advised the parties that if the declarant ([Mr. Bryant]) testified, then he could be questioned in connection [with] his post-arrest exculpatory statement." Id.

In his Reply, Mr. Bryant asserts that:

the government's argument fails in two aspects. First, the government cites no precedent permitting such a preemptive jail threat in this context, particularly where the statement at issue, which partially inculpated and partially exculpated Bryant, was critical to the defense on the § 924(c) aiding and abetting count and where the threat of jail had an in terrorem effect that led counsel to avoid readdressing the issue at trial. Second, the government fails to appropriately link counsel's ineffectiveness on the severance issue where the district court's sole basis for excluding the essential evidence was a <u>Bruton</u> ruling. <u>See</u> Cr-DE:144:8 ("THE COURT: . . . If anybody violates the <u>Bruton</u> [r]ule, you're going to go to jail as a lawyer.").

Reply at 8. Mr. Bryant argues that "prejudice from the impact on counsel is seen in that the evidence should not have been deemed barred by <u>Bruton</u> where no defendant interposed an objection to the testimony." <u>Id.</u>

Mr. Bryant made two statements concerning Mr. Mack's lack of knowledge that the items Mr. Mack was escorting were drugs. Mr. Bryant made statements to the interviewing officers upon his arrest and to the prosecutors on the Friday before the start of trial. <u>See</u> Affidavit of Bryant at ¶¶ at 5-6.

"The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . . ." <u>Strickland</u>, 466 U.S. at 684-85. "The Sixth Amendment guarantees anyone accused of a crime the right to assistance of counsel. U.S. Const. amend. VI. An alleged Sixth Amendment violation must have had (or threatened) 'some adverse effect upon the effectiveness of counsel's representation or . . . produced some other prejudice to the defense' to warrant 'imposing a remedy.'" <u>Coloma v. United States</u>, 799 F. App'x 788, 789 (11th Cir. 2020) (quoting <u>United States v. Morrison</u>, 449 U.S. 361, 365 (1981)).

Mr. Bryant is not entitled to relief on this claim. The trial transcript shows that the

District Court made an evidentiary ruling excluding any statements inculpating a co-defendant and issued a warning to the parties that they would go to jail if they violated that ruling. Trial Transcript DE# 144 at 8-11.

The District Court's comments about the consequences of violating its evidentiary ruling do not entitle Mr. Bryant to relief. As one court observed "because all attorneys potentially face contempt citations, no particular attorney can be considered ineffective due to a concern that he or she might be so cited." United States v. Taylor, 139 F.3d 924, 932 (D.C. Cir. 1998) (rejecting claim that "trial counsel was unable to render effective assistance due to a conflict of interest."); Bassett v. United States, 188 F. Supp. 3d 411, 417 (D.N.J. 2016) (rejecting section 2255 claim that "trial counsel was ineffective during sentencing due to a conflict of interest created by the Court's 'threat' to sanction counsel."); United States v. Shark, 51 F.3d 1072, 1076 (D.C. Cir. 1995) (in case where trial court commented that "[trial counsel] didn't pay any attention to me. He doesn't pay any attention to me, anyhow, and next time I'm going to get his attention and put him in the cell block," stating "[w]e very much doubt that mere fear of rebuke from the court could ever give rise to a conflict of interest sufficient to establish a predicate for ineffective assistance. Were that the case, any provocation of the court, even on the smallest matter, could be maneuvered into an excuse for invalidating a conviction."). Although the aforementioned cases address conflict of interest claims, their observations—about the nature of comments such as the one made by the District Court in this case—are relevant here.

Additionally, Mr. Bryant has not proffered any evidentiary support, such as an affidavit from his trial counsel, for his conclusory and self-serving assertion that the

District Court's warning of jail time had a chilling effect on counsel's performance at trial.

Mr. Bryant is not entitled to relief on this claim because he has failed to show that his Sixth Amendment and Due Process rights have been violated. Notably, Mr. Bryant's post-arrest statements were barred by the <u>Bruton</u> rule. Even if, as Mr. Bryant asserts, there was no <u>Bruton</u> violation because none of the co-defendants objected to the introduction of the post-arrest statements, Mr. Bryant does not address how he would have overcome the hearsay rule. <u>See</u> <u>Marin</u>, 669 F.2d at 84 (noting that a defendant's own prior statement introduced for the truth of the matter asserted was inadmissible hearsay).

Moreover, and as noted by the Eleventh Circuit, there was some risk to Mr. Bryant in the introduction of these post-arrest statements into evidence. <u>See</u> <u>Mack</u>, 572 F. App'x at 935 (noting that "the statements are at least **mildly inculpatory as to Bryant**—he was telling the agents and the prosecutor that he had never told Mack that drugs would be involved in the deal; only cash would be involved. **The question which must be asked is: how would Bryant know what was going to be involved in the deal unless he was himself culpable?**") (emphasis added). Thus, there is no indication from this record that Mr. Bryant's trial counsel was intimidated by the District Court's comments and would have sought to introduce the post-arrest statements but for the District Court's warning.

Mr. Bryant is not entitled to relief on this claim.

## **RECOMMENDATION**

Based on the foregoing, the undersigned respectfully RECOMMENDS that the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 2/23/16) be **DENIED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 30th day of March, 2021.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE